UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: _____

MARTINE HYPPOLITE-MARRIOTT,

    Plaintiff,

v.

FLORIDA DEPARTMENT OF VETERANS
AFFAIRS d/b/a ALEXANDER
"SANDY" NININGER STATE VETERANS' NURSING HOME

    Defendant.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiff, MARTINE HYPPOLITE-MARRIOTT, by and through her undersigned counsel, sues the Defendant, FLORIDA DEPARTMENT OF VETERANS AFFAIRS d/b/a ALEXANDER "SANDY" NININGER STATE VETERANS' NURSING HOME, and alleges as follows:

**JURISDICTION AND VENUE**

    1.    This is an action for damages and to remedy violations of the rights of MS. HYPPOLITE-MARRIOTT under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq., the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., for retaliation under 29 U.S.C. § 215 and for violations of the Families First Coronavirus Relief Act of 2020 ("FFCRA") , 29 CFR 826, and the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), to redress injuries done to her by the Defendant, FLORIDA DEPARTMENT OF VETERANS AFFAIRS d/b/a ALEXANDER "SANDY" NININGER STATE VETERANS' NURSING HOME ("Defendant").

1

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 201 et seq.

3. The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

4. At all times material hereto, Plaintiff has been a citizen and resident of Broward County, Florida and is otherwise *sui juris*.

5. At the relevant time, Plaintiff was a pregnant, disabled woman, and, as such, Plaintiff is a member of a protected class under Chapter 760 because the terms, conditions, and privileges of her employment were altered because of her pregnancy, disability, and mandated FMLA leave.

6. Defendant is a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

7. Defendant has, at all times material hereto, employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

8. At all times material hereto, Defendant was a covered employer within the meaning and contemplation of the FMLA, 29 U.S.C. §2611(4)(A), in that they employed more than 50 employees within a 75 mile radius in 20 or more workweeks in each calendar year.

9. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of the FLSA and thus was an "employee" under the FFCRA.

10. At all times material hereto, Plaintiff was an "eligible employee" within the meaning of the FFCRA.

11. At all times material hereto, Plaintiff was employed at least 30 calendar days by Defendant.

12. At all times material hereto, Defendant was a public agency and therefore an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

13. At all times material hereto, Defendant was and continues to be an enterprise engaged in commerce in connection with the activities of a public agency within the meaning of the FLSA, 29 U.S.C. §§ 203(r) and 203(s).

14. At all times material hereto, the work performed by Plaintiff was directly essential to the business performed by Defendant.

15. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

16. Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

17. More than 180 days have elapsed since the filing of Plaintiff's charge and the Florida Commission on Human Relations has not issued a determination.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

18. Defendant hired Plaintiff as a licensed practical nurse in November 2016. The Defendant unlawfully terminated the Plaintiff on April 26, 2020.

19. As a licensed practical nurse, Plaintiff's primary duties and responsibilities included patient care. Plaintiff worked the night shift regularly.

20. Plaintiff was qualified for her position, licensed practical nurse, based on her experience and training.

21. The Defendant was aware that the Plaintiff was a disabled pregnant woman and Defendant mandated that she take FMLA leave and this caused the Defendant to discriminate and retaliate against her.

22. On January 26, 2019, the Plaintiff started bleeding excessively while she was at work. The Plaintiff informed her supervisor and told her that she needed to go to the hospital. The Plaintiff found out that she was pregnant and possibly having a miscarriage. The Plaintiff was put on bedrest for 3 days, so she disclosed her high-risk pregnancy to the supervisor, Ms. Smith, and Human Resources. The Plaintiff's primary care doctor subsequently extended her bed rest for another week and a half.

23. In mid-February 2019, the Plaintiff's Ob-gyn confirmed that her pregnancy was high risk and that she should not be on her feet at work.

24. On February 13, 2019, Defendant, through its human resources department employee, Ms. Leanne Grayston, notified Plaintiff that she was required to take FMLA leave because she had taken off five to seven consecutive days. The Plaintiff told Ms. Grayston that she did not need or want to take FMLA leave as she was saving the leave for when she gave birth. Ms. Grayston instructed Plaintiff to use intermittent FMLA leave to protect her job. Based on Ms. Grayson's recommendation, Plaintiff submitted paperwork for intermittent FMLA leave to retroactively cover her absence.

25. Plaintiff requested that Defendant provide her with a reasonable accommodation going forward that would allow her to perform sedentary work during a daytime shift or on the night shift.

26. Thereafter, Defendant denied the Plaintiff's requested accommodation for a daytime shift that would allow her to work light duty and claimed that there was not day shift position available. Defendant also denied Plaintiff any accommodation on the night shift because, according to Defendant, all night shift work required that she be able to push, pull, or lift, which would be in contravention of her doctor's limitations. After failing and refusing to accommodate her, the Defendant mandated that the Plaintiff take continuous FMLA leave based on this alleged inability to accommodate her.

27. In April, May and the beginning of June, pursuant to Defendant's policy, the Plaintiff recertified her leave every 30 days. The recertification in June included another note from the Plaintiff's doctor detailing her medical limitations.

28. On June 5, 2019, Ms. Grayston informed the Plaintiff that her FMLA leave protection would end on June 24, 2019, but that it would be extended for another three weeks. She also stated that they may have to terminate the Plaintiff if she did not give birth by July 19, 2019, despite the fact that Plaintiff's due date was August 23, 2019.

29. In light of Ms. Grayston's statement, the Plaintiff obtained a letter from her doctor, against medical advice, allowing her to return to work on July 10, 2019, but with limitations.

30. The Plaintiff provided her doctor's letter and the Functional Limitation Form to Human Resources. In response, Defendant allowed Plaintiff to return to work on the night shift with modified duties and responsibilities, all of which would have been a reasonable accommodation when Plaintiff first requested one in February 2019. The Plaintiff exhausted her FMLA leave unnecessarily.

31. The Plaintiff delivered her baby on August 2, 2019 and remained in the hospital for a week. The Plaintiff returned to work in November 2019.

32. On March 25, 2020, the Plaintiff reported to work. Pursuant to Defendant's Covid-19 protocols, the Plaintiff allowed Defendant to take her temperature, at which point Plaintiff presented with an elevated temperature of 104 degrees. The Defendant sent the Plaintiff home with instructions to self-quarantine due to suspected Covid-19.

33. The Plaintiff spoke with Mr. Militello in Human Resources and Ms. Wint-Swasey, Assistant Director of Nursing, and they directed her to obtain a doctor's note to return to work. When Plaintiff attempted to obtain the requested note, the medical provider informer her that she could not receive one because people could have no symptoms but still be positive for Covid-19.

34. When Plaintiff informed Defendant of her inability to obtain a note to return to work, Defendant told her to self-quarantine for 14 days.

35. For several days, Plaintiff attempted to obtain a Covid-19 test. She finally was able to schedule one, and on April 6, 2020, the Plaintiff spoke with Human Resources and informed them of her Covid-19 testing date. Ms. Grayston stated that Defendant would pay the Plaintiff from the date she scheduled the Covid-19 test until the date she received her lab results.

36. On April 13, 2020, the Plaintiff took a Covid-19 test and was informed the results would take 4 business days to 2 weeks. The Plaintiff relayed this information to Ms. Grayston along with all documentation pertaining to her Covid-19 testing. A week later, the Plaintiff informed Human Resources that she still had not received her test results and provided a copy of the request she sent to the lab seeking her results.

37. While waiting for her test results, on April 24, 2020, the Plaintiff received a letter from Defendant stating that her job was in jeopardy due to unapproved absences. The Plaintiff contacted Ms. Grayston to remind her about her quarantine and that she was waiting for her Covid-

19 test results. Ms. Grayston dismissed this explanation by saying that the results were taking too long.

38. The Plaintiff then called and emailed Quest Diagnostics to inquire about her test results. The Plaintiff provided a copy of this correspondence to Defendant.

39. The Plaintiff spoke with Mr. Militello the next day. The Plaintiff explained that she still had not received her test results and had been in contact with Ms. Grayston throughout.

40. On April 26, 2020, the Plaintiff received a call from Memorial Hospital that she tested negative for Covid-19. The next day, Plaintiff obtained documentation reflecting her negative test result and provided it to Mr. Militello, Ms. Brown, and Ms. Grayston.

41. Thereafter, Mr. Militello called the Plaintiff to terminate her employment due to "unauthorized absence from work for five consecutive workdays." The Plaintiff asked on what grounds since she provided proof of her test results. He told the Plaintiff to speak with Ulysses who oversees Human Resources and that Ulysses may be able to help her. The Plaintiff called and emailed Ulysses multiple times and never received a response.

42. Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendant pursuant to statute.

43. All conditions precedent have been met or waived.

## COUNT I: FMLA INTERFERENCE

44. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43 as if fully set forth herein.

45. The Defendant mandated that the Plaintiff take FMLA leave instead of accommodating her with light duty and sedentary work.

46. When Defendant mandated that the Plaintiff take FMLA leave instead of accommodating her with light duty and sedentary work., they interfered with Plaintiff's right to her position, or its equivalent, and thus violated the FMLA.

47. As a direct result of the Defendant mandating that the Plaintiff take FMLA leave instead of accommodating her with light duty and sedentary work, Plaintiff has suffered, and will continue to suffer, a loss of wages, employment benefits, and other compensation denied or lost to her by reason of Defendant's violation. Defendant's conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to her loss of wages salary, employment benefits, and other compensation.

48. Plaintiff is entitled to an award of her reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff hereby requests judgment in her favor and against Defendant for (a) damages for lost wages, employment benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA, plus interest on such sum, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii); (b) liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (c) equitable relief as this Court deems appropriate pursuant to 29 U.S.C. § 2617(a)(1)(B); (d) Plaintiff's costs, expert witness fees, and attorney's fees pursuant to 29 U.S.C. § 2617(a)(3); and (e) such other and further relief as this Court deems just and proper.

## COUNT II: FMLA RETALIATION

49. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 43 as if fully set forth herein.

50. Under the FMLA, Plaintiff had the right to be restored to her former position or its equivalent upon her return to work.

51. The Defendant terminated the Plaintiff for taking FMLA leave.

52. Plaintiff's termination constituted an adverse employment action.

53. Plaintiff's FMLA leave was, at a minimum, a motivating factor in Defendant's decision to terminate Plaintiff's employment.

54. Defendant's purported reason(s), if any, for terminating Plaintiff's employment are pretextual.

55. As a direct result of her termination, Plaintiff has suffered, and will continue to suffer a loss of wages, employment benefits, and other compensation denied or lost to her by reason of Defendant's violation. Defendant's conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to her loss of wages salary, employment benefits, and other compensation.

56. Plaintiff is entitled to an award of her reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff, hereby requests judgment in her favor and against Defendant for (a) damages for lost wages, employment benefits, and any other compensation denied or lost to Plaintiff by reason of Defendant's violation of the FMLA, plus interest on such sum, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii); (b) liquidated damages pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii); (c) equitable relief as this Court deems appropriate pursuant to 29 U.S.C. § 2617(a)(1)(B); (d) Plaintiff's costs, expert witness fees, and attorney's fees, pursuant to 29 U.S.C. § 2617(a)(3); (e) and such other and further relief as this Court deems just and proper.

### COUNT III: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Discrimination on the Basis of Pregnancy)**

57. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 43, inclusive, as though same were fully re-written here.

58. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

59. The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

60. Plaintiff was pregnant and suffered from a pregnancy-related disability, and therefore was a member of a protected class.

61. Despite the Plaintiff being pregnant, and suffering from a pregnancy-related disability, her request for a reasonable accommodation was denied.

62. Upon information and belief, non-pregnant employees are accommodatedas necessary.

63. At all relevant and material times, Defendant failed to comply with the FCRA.

64. The discrimination of Plaintiff by Defendant was caused by Defendant being aware that Plaintiff was pregnant and/or that she suffered from a pregnancy-related disability.

65. At all times relevant, including at the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was pregnant and/or that she suffered from a pregnancy-related disability.

66. At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

67. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

68. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of her pregnancy and/or pregnancy-related disability in violation of the FCRA with respect to its decision to not accommodate her.

69. Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because she was pregnant and/or suffered from a pregnancy-related disability, in violation of the FCRA.

70. Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's pregnancy and/or pregnancy-related disability.

71. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her pregnancy and/or pregnancy-related disability. The discrimination on the basis of pregnancy constitutes unlawful discrimination.

72. As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, prejudgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

**COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Discrimination on the Basis of Disability)**

73. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 43, inclusive, as though same were fully re-written here, and says:

74. The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

75. Plaintiff had a disability as that term is defined in the FCRA, and therefore, is a member of a protected class.

76. At all relevant and material times, Defendant failed to comply with the FCRA.

77. At all times relevant hereto, Defendant regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

78. At the time of the unlawful termination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendant.

79. The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

80. Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, terminated Plaintiff on account of her disability in violation of the FCRA.

81. The Defendant's refusal to accommodate the Plaintiff demonstrates the Defendant's lack of adherence to its policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

82. Because Plaintiff had a disability and requested a reasonable accommodation, she was terminated by management and the Defendant refused to take any action to prevent the discrimination.

83. Any allegedly nondiscriminatory reason for the Defendant's termination of the Plaintiff is a mere pretext for the actual reasons for terminating the Plaintiff; inter alia Plaintiff's disability.

84. Upon information and belief, the Defendant does not terminate non-disabled employees without merit.

85. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from termination due to her disability. Termination on the basis of disability constitutes unlawful discrimination.

86. As a result of Defendant's violation of the FCRA, Plaintiff has suffered damages.

87. As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendant, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for emotional distress, prejudgment and post-judgment interest on her damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

**COUNT V: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992**
**(Retaliation)**

88. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 43 inclusive, as though same were fully re-written here.

89. Plaintiff had the right to voice her grievances that she was being discriminated against.

90. When the Plaintiff engaged in the protected activity of reporting the discrimination, the Defendant retaliated against her by terminating her.

91. As a result of Defendant's actions, Plaintiff has suffered damages.

92. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff prejudgment and post-judgment interest; (d) award Plaintiff compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## COUNT VI:   FLSA RETALIATION

93. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 43 inclusive, as though same were fully re-written here.

94. By pursuing her rights under the FFCRA, Plaintiff engaged in protected activity under the FLSA.

95. By terminating Plaintiff's employment, Defendant retaliated against Plaintiff for engaging in protected activity under the FLSA.

96. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

97. Plaintiff was injured due to Defendant's violations of the FLSA.

WHEREFORE, Plaintiff requests that this Court enter a judgment that Defendant retaliated against Plaintiff in violation of the FLSA, awarding damages to compensate her for lost wages, benefits, and other remuneration, awarding compensatory damages, including emotional distress, allowable at law, and granting such other and further relief as this Court deems just and appropriate.

## COUNT VII: FFCRA RETALIATION

98. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 43 inclusive, as though same were fully re-written here.

99. Plaintiff presented at work with symptoms of suspected Covid-19.

100. By requesting paid leave due to Plaintiff's suspected Covid-19, Plaintiff engaged in protected activity under the FFCRA.

101. By terminating Plaintiff's employment, Defendant retaliated against Plaintiff for engaging in protected activity under the FFCRA.

102. The foregoing conduct, as alleged, constitutes a willful violation of the FFCRA.

103. Plaintiff was injured due to Defendant's violations of the FFCRA.

WHEREFORE, Plaintiff requests that this Court enter a judgment that Defendant retaliated against Plaintiff in violation of the FFCRA, awarding damages to compensate her for lost wages, benefits, and other remuneration, awarding compensatory damages, including emotional distress allowable at law, and granting such other and further relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 12th day of February, 2021

By: /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff